UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANHEUSER-BUSCH, LLC, | ) |
| | ) |
| Plaintiff-Counterdefendant, | ) |
| | ) |
| vs. | ) No. 4:16-CV-990 SNLJ |
| | ) |
| LOCAL 1, INTERNATIONAL | ) |
| BROTHERHOOD OF ELECTRICAL | ) |
| WORKERS, AFL-CIO, | ) |
| | ) |
| Defendant-Counterplaintiff. | ) |

## MEMORANDUM and ORDER

Plaintiff-counterdefendant Anheuser-Busch, LLC ("A-B" or "the Company") and defendant-counterplaintiff Local 1, International Brotherhood of Electrical Workers, AFL-CIO ("IBEW Local 1" or "the Union") are parties to a collective bargaining agreement pursuant to which they entered arbitration. The Company seeks to vacate the April 22, 2016 labor arbitration award ordering reinstatement of electrician Gerald Ray Squalls ("Squalls" or "the Grievant"), who was terminated by the Company on August 3, 2015. The Union seeks an order enforcing the arbitration award. The parties have filed cross-motions for summary judgment.

**I. Background**

The following facts are undisputed except where indicated. The Union represents a bargaining unit of maintenance employees at the Company's brewery in St. Louis, Missouri, and the parties' relationship is covered by a collective bargaining agreement

1

("CBA"). The CBA provides for the filing of a grievance concerning disputes about the meaning, interpretation, application, and violation of the CBA.

Gerald Squalls worked for the Company as an electrician and was a member of the bargaining unit represented by the Union. Squalls's job duties included working with high voltage and high-speed machinery, including palletizers, a dangerous piece of equipment with the capacity to crush and kill people. Squalls's supervisor Russ Mathis saw Squalls before the start of his July 17, 2015 shift and noticed that Squalls was slow and struggling to eat a candy bar. Mathis decided Squalls was not fit to work in that condition and took him to a conference room. Mathis and another supervisor filled out a Suspicion Observation Checklist, and the Company decided to test Squalls for alcohol. Squalls took a breathalyzer test and registered a blood alcohol content of 0.206, well above the legal limit for driving. A urine test for other drugs was negative.

The Company suspended Squalls pending investigation. Squalls said he and a friend began drinking alcohol[1] at 6:30 p.m. on the night of his shift and that he stopped drinking at 8:30 p.m. because he knew he had to work at 11 p.m.. The Company was concerned that Squalls did not realize he was impaired and, taking into account that he and three other employees had been suspended for drinking beer at work in January 2011, the Company terminated Squalls on August 3, 2015 for violation of its Rule 9, which prohibits "Being in a condition which makes it impossible for you to perform your work in a satisfactory manner."

Central to this case is the meaning and application of the "Beer Drinking

---

[1] It is undisputed that Squalls was drinking alcohol that was not beer.

Memorandum of Understanding" or "Beer Drinking MOU," which is part of the CBA.

The MOU states as follows:

## BEER DRINKING DISCIPLINE

The following progressive discipline shall apply to any employee involved in the unauthorized consumption of beer on plant premises before, during, or after the employee's shift.

First Offense --- a one month suspension without pay.

Second Offense --- a second offense within a four-year period – A two-month suspension without pay.

Third Offense --- a third offense within a four-year period of having served a two-month suspension for unauthorized beer consumption shall require discharge.

It is further understood and agreed that:

1.      The levels of discipline provided above are firm.   No arbitrator shall have the power to reduce the level of discipline unless the arbitrator finds that the employee is not guilty of consumption of beer on premises.

2.      The above disciplinary program deals with only the unauthorized consumption of beer on plant premises.   The Company's rules and disciplinary programs relating to other alcoholic beverages, drugs, intoxication, theft, and other matters shall in no way be prejudiced by this Agreement.

3.      Evidential Breath Testing (EBT) --- if reasonable suspicion is substantiated that an employee has violated the Company's Alcohol Policy (requires employer to base suspicion on observable symptoms indicating intoxication – e.g., appearance, behavior, speech, etc.) then the employee will be required to submit to an EBT alcohol breath test…

An employee testing positive for alcohol will be referred to the [Employee Assistance Program ("EAP")] for evaluation and treatment.   Failure to comply with the EAP treatment program and follow-up recommendations will result in dismissal…

That MOU was in place because it was once acceptable for Company employees to drink beer while working. When that practice stopped, the MOU's progressive discipline program was put into place to ease employees into the new practice.

The Union filed a grievance challenging Squalls's discharge on August 10, 2015. The Company denied the grievance, and, pursuant to the CBA, the unresolved grievance was submitted to arbitration before a labor arbitrator chosen by the parties, Terry Bethel. A hearing was held on March 3, 2016, and Arbitrator Bethel issued his award on April 20, 2016. An amended award was issued on April 22, 2016 to reserve jurisdiction to resolve remedial disputes. The award directed the Company to reinstate Squalls and pay him lost wages and benefits excluding 30 days, which represented a suspension. The Arbitrator further ordered the Company to reinstate Squalls no later than June 2, 2016, which it did not do. The Arbitrator later concluded that the Company had not advanced a good faith reason for its failure to reinstate Squalls and ordered the Company to pay interest on Squalls's backpay until he was reinstated.

The Company filed this lawsuit seeking an order vacating the award, and the Union counterclaimed seeking to enforce the award. The parties have filed cross-motions for summary judgment.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467

4

(1962). In this action to vacate an arbitration award, brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the Court must defer to the arbitrator's interpretation of the CBA except in limited circumstances. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract." *Id.* "Only when an arbitrator issues an award that does not 'draw its essence from the contract,' because it reflects instead the arbitrator's 'own notions of industrial justice,' may a court vacate an arbitrator's decision." *Alcan Packaging Co. v. Graphic Commc'n Conference, Int'l Bhd. of Teamsters & Local Union No. 77-P*, 729 F.3d 839, 841 (8th Cir. 2013), as corrected (Oct. 30, 2013) (quoting *Misco*, 484 U.S. at 38).

### III. Discussion

The Company seeks an order vacating the Arbitration Award because, it says, the Arbitrator based his award on something other than the CBA, displacing the Company's rule that an employee is subject to discharge for "[b]eing in a condition which makes it impossible for [the employer] to perform [his] work in a satisfactory manner." It is not disputed that Squalls's blood alcohol level tested at 0.206, more than twice the legal limit for driving, more than two hours after Squalls drove to work. It is also undisputed that Squalls became intoxicated by drinking alcohol (not beer) before arriving on Company premises. The Company said that it terminated Squalls because Squalls was apparently

5

unaware of his impaired state despite the high blood alcohol level; because Squalls said he had drunk alcohol before his shift on other occasions; and because Squalls had been suspended pursuant to the Beer Drinking MOU in January 2011 for drinking beer on plant premises.

The Union observes that there is no "alcohol policy" that applies generally to bargaining unit employees like Squalls except the last two paragraphs of the Beer Drinking MOU. The MOU states that the "following progressive discipline shall apply to any employee involved in the unauthorized consumption of beer on plant premises" and, below the progressive discipline description, that the "above disciplinary program deals with only the unauthorized consumption of beer on plant premises." The last two paragraphs of the MOU discuss Evidential Breath Testing ("EBT") and note that if the Company has "substantiated" "reasonable suspicion" that "an employee has violated the Company's Alcohol Policy," then the employee must submit to a breath test. If the employee tests positive for alcohol, then the employee will be referred to the "Employee Assistance Program" "for evaluation and treatment." If the employee fails to comply with the EAP program or follow-up recommendations, the employee will be terminated.

Unlike the first part of the MOU, those last two paragraphs do not mention beer drinking on Company property, and the Union contends that they apply generally to employees testing positive for alcohol at work. The Union therefore says that although employees should know that reporting for work intoxicated is prohibited, the Beer Drinking MOU communicates that employees would be referred to EAP, not terminated, if such an event occurs.

The Arbitrator found that those two last paragraphs apply in cases where there is reasonable suspicion that someone found drinking beer on Company property is impaired, but that did "not mean there is no similar program for non-beer drinking employees who drank before work." (#1-5 at 9.) The Beer Drinking MOU states that "The Company's rules and disciplinary procedures relating to other alcoholic beverages…[and] intoxication …shall in no way be prejudiced by this Agreement." Thus, the question the Arbitrator asked was "whether the Company had identified 'rules and disciplinary procedures' dealing with intoxication as a result of drinking off Company premises," and, more precisely, "whether the Company's alcohol policy for intoxication due to off-premises drinking permits the Company to discharge an employee for a first positive alcohol test."

Notably, the Company does have an "alcohol policy" delineated in the Personnel Policies and Procedures for Salaried Employees which encourages employees to seek EAP assistance before an alcohol problem "interferes with job performance." Unlike the Beer Drinking MOU, that policy says nothing about referring employees to EAP when they test positive at work; it does say that violation of the policy can result in termination of employment. However, the Arbitrator found there was no evidence that that policy, which was explicitly for salaried employees, was ever distributed to bargaining unit employees such as Squalls. Further, the Arbitrator concluded that the next-to-last paragraph of the MOU (numbered Paragraph 3) --- which invokes the "Alcohol Policy" and allows testing in case of observable intoxication symptoms --- suggests that at the time the parties agreed to the MOU, they recognized there was a Company Alcohol Policy that applied to bargaining unit employees, and that Policy involves referral to EAP for a first

7

positive alcohol test. In contrast, the Policy for salaried employees does not include a referral to EAP for the same conduct.

As the Arbitrator concluded:

> The most reasonable interpretation of the MOU is that beer drinking without intoxication is covered by a three step progression schedule beginning with a one month suspension and ending with discharge. But when there is reasonable suspicion to test employees, the Beer Drinking MOU invokes the Company's Alcohol Policy and treats employees accordingly. This does not mean that the MOU itself creates a non-beer drinking testing policy that can result in referral to EAP; rather, once a beer drinking employee is determined to be intoxicated on Company property, the parties intended for the already existing Company Alcohol Policy to kick in. And, the Beer Drinking MOU recognizes that the Company Alcohol Policy that applies generally to bargaining unit employees includes a referral to EAP. This is consistent with the Illegal Drug Testing provisions in Article XXIX, which says that an employee who tests positive for [drugs] will be "referred to the [EAP]" and then will be subject to unannounced tests, with a subsequent positive test result resulting in termination.

(#1-5 at 10.) Furthermore, the Arbitrator found that the Company had applied such a policy to other employees --- that there were two cases in which an employee was referred to EAP for testing over the legal limit, even though (according to the Arbitrator) there was no indication that the employees had been drinking beer on Company property. The Arbitrator also found it significant that the Company had apparently never discharged a bargaining unit employee for a first positive alcohol test at work.

Ultimately, the Arbitrator found that the Beer Drinking MOU invokes an "Alcohol Policy" that "applies to bargaining unit employees who were intoxicated when they reported to work" and that the "Policy includes a referral to EAP for a first positive alcohol test and follow-up testing over a four year period." (#1-5 at 12.) On all this, the Arbitrator concluded that the Company did not have just cause for discharging Mr. Squalls. Instead, the Arbitrator determined that Squalls should have been retained as an employee

8

and referred to EAP.   Inexplicably, he also directed the Company to reinstate Squalls with a 30-day unpaid suspension and to pay backpay for all but the 30-day suspension period, as if the Beer Drinking Discipline was to be applied even though no beer drinking was involved.   In any event, because Squalls said he attended counseling after his suspension and discharge, the Arbitrator ordered that the Company could require evidence showing that Squalls's counseling was substantially in compliance with the usual EAP evaluations and treatment plans.

The Court must vacate the Arbitrator's Award.   The MOU painstakingly applied by the Arbitrator explicitly states that it applies to employees who drank beer on Company premises.   The memorandum is titled "Beer Drinking Discipline."   Its first sentence says the discipline applies to beer drinking on plant premises.   The first sentence of the MOU's numbered Paragraph 2 states "The above disciplinary program deals with only the unauthorized consumption of beer on plant premises."   The second sentence of Paragraph 2 explicitly recognizes that discipline for other alcohol-related situations is to be applied independently of the MOU: "rules and disciplinary programs relating to other alcoholic beverages, drugs, intoxication, theft, and other matters shall in no way be prejudiced by this Agreement."   The Arbitrator, however, determined that even though the MOU applied to beer drinking on premises, that did "not mean there is no similar program for non-beer drinking employees who drank before work."   (#1-5 at 9.)   That is, the Arbitrator decided to apply the Beer Drinking MOU to Union employees who arrive at

work intoxicated, despite the clearly stated language that limits its application "to any employee involved in the unauthorized consumption of beer on plant premises."[2]

The law requires this Court to enforce awards in which the arbitrator "at least arguably construed the relevant provision of the contract." *Alcan*, 729 F.3d at 843. Although "arguably construed" is a low threshold, this Court's review is not a rubber stamp. Eighth Circuit precedent is instructive. In *Coca-Cola*, an arbitration award was vacated because the arbitrator relied on a "just cause" analysis under the parties' CBA where a superseding "last chance" agreement between the company and the grievant should have been applied. *Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1442 (8th Cir. 1992). Here, the Company fired Squalls for violating Rule 9, which prohibits employees from being "in a condition which makes it impossible for [the employees] to perform [their] work in a satisfactory manner." The Union did not dispute that Squalls had violated Rule 9, but the Union argued that the Beer Drinking MOU should apply to save Squalls from termination. As in *Coca-Cola*, where the arbitrator applied irrelevant "just cause" terms where a "last chance agreement" should have been applied, the Arbitrator here applied the irrelevant Beer Drinking MOU where the CBA otherwise would not have limited the Company's authority.

---

[2] The Arbitrator supported the Award by noting that two other Company employees had been referred to EAP after alcohol-related incidents. Testimony at the hearing established that both of those employees were disciplined for consuming beer on the Company's premises, and they were therefore disciplined pursuant to the Beer Drinking MOU. The Arbitrator apparently discounts that testimony and states that his own review of documents not discussed at the hearing suggests the employees drank alcohol before arriving at work. Indeed, those documents are susceptible to the interpretation that the employees drank alcohol before arriving at work, despite some indications that they were explicitly treated per the MOU. Although even the Arbitrator appears to acknowledge the evidence is uncertain as to those employees, they are not the subject of this lawsuit. It is undisputed that Squalls consumed alcohol --- not beer --- off the premises. Therefore the MOU does not apply to Squalls's conduct.

Other arbitration awards have been vacated where, as here, "the arbitrator himself finds the contract terms to be clear but nevertheless enters an award contrary to those terms." *Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471*, 80 F.3d 284, 288 n.4 (8th Cir. 1996). In *Keebler*, the Eighth Circuit reversed a district court and ordered an award vacated where the arbitrator made conclusions "under the clear terms" of that CBA but then imposed a "new obligation" on the company. *Id.* at 288; *see also Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184, 187 (8th Cir. 1988) ("Although the arbitrator may interpret ambiguous language, the arbitrator may not disregard or modify unambiguous contract provisions."). Here, the Arbitrator stated that "the last two paragraphs detail the treatment of an employee who became intoxicated drinking beer at work," but the Arbitrator then went on to apply the MOU language (and discipline) to Squalls, who had been drinking other alcohol at home, stating that those two paragraphs do "not mean there is no similar program for non-beer drinking employees who drank before work." The Beer Drinking MOU says what it says. The Arbitrator recognized that it applies only to beer drinking employees, but he still applied the memorandum's discipline to Squalls's conduct, right down to the month-long suspension called for under the beer-drinking progressive discipline plan. Although this Court is mindful of the Eighth Circuit's recent admonition that "we do not review whether the arbitrator 'correctly' construed the Collective Bargaining Agreement," *NFL Players Assoc. v. NFL*, 831 F.3d 985, 993 (8th Cir. 2016), the arbitrator "may not ignore the plain language of the contract," *Misco*, 484 U.S. at 38, and he "does not sit to dispense his own brand of industrial justice." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960). Where the arbitrator's words "manifest an infidelity to this

11

obligation" to draw the award's "essence from the" CBA, the court has "no choice" but to refuse to enforce the award. *Id.* The Union couches the Arbitrator's decision as having, "at a minimum, 'arguably construed' and applied the Company's Alcohol Policy referred to in the CBA" (#22 at 3), but that Policy is referred to in the MOU, and the MOU is --- by terms the Arbitrator himself recognized --- not applicable under the undisputed facts of this case. In short, the MOU for Beer Drinking Discipline applies only to beer drinking on Company premises. The Court cannot ignore the Arbitrator's application of that wholly inapplicable MOU. *See Coca-Cola*, 959 F.2d at 1442; *Keebler Co.*, 80 F.3d at 288 n.4; *Inter-City Gas Corp.*, 845 F.2d at 187. The Arbitration Award will be vacated.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff-counterdefendant Anheuser-Busch, LLC's motion for summary judgment (#18) is GRANTED.

**IT IS FURTHER ORDERED** that defendant-counterplaintiff Local 1, International Brotherhood of Electrical Workers, AFL-CIO's motion for summary judgment (#15) is DENIED.

**IT IS FINALLY ORDERED** that plaintiff's motion to expedite is **DENIED** as moot.

Dated this   18th   day of November, 2016.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE